### BRISBAN *vs.* BOYD and others.

A commission merchant has such an interest in the goods consigned to him for sale, that he may insure them to their full value, in his own name.

But it is not his duty to insure the goods for the benefit of his principal, without some express or implied directions from the latter to that effect.

And if the goods, being stored in the usual place, are destroyed by fire, the commission merchant will not be responsible to his principal for the loss.

Where a merchant in Alabama wrote to his factor in New-York, and proposed to ship for that place 300 bales of cotton on their joint account, if the agent should immediately, on the receipt of his letter, give notice of his election to accept the proposition; and the agent immediately upon the receipt of his principal's letter replied to the same, accepting the proposition, and requesting his principal to designate and mark the cotton to be shipped on their joint account, and to advise him, when the same should be shipped; *It was held*, that as soon as the agent replied to the letter of his principal, accepting the proposition, the contract was complete, and could not be rescinded by either party, without the consent of the other.

Where a former customer of a partnership having no notice of its dissolution, deals with one of the partners on the credit of the firm, all the partners will be liable to such customer on the contract.

But if the customer was informed of the dissolution, immediately after a sale to one of the former partners, on the credit of the firm, and before the goods were delivered, a court of equity would not permit the vendor to recover the price of the goods against the former partners of the vendee.

After the dissolution of a partnership, one partner cannot bind the other by the acknowledgment of a debt which is neither legally or equitably due, or by giving a note for the same, although at the time of such acknowledgment, or of the giving of the note, the supposed creditor had no knowledge of the dissolution.

THE bill in this cause was filed against Boyd and Suydam, October 2. and against Hernden, a former partner of the complainant, to set aside a settlement made between Hernden and the other defendant, after a dissolution of the complainant's partnership with him; and to restrain Boyd and Suydam from proceeding at law against the complainant and Hernden, to collect a note given on such settlement. The facts, so far as is necessary to understand the decision, are stated in the opinion of the chancellor.

VOL. IV. 3

*B. F. Butler*, for the complainant. As the partnership between the complainant and Hernden expired before the settlement was made by Hernden with the defendants Boyd and Suydam, the complainant is not bound by such settlement. One partner cannot bind his co-partners by an acknowledgment of a debt, after a dissolution of the partnership. (*Walden* v. *Sherburne*, 15 *John. Rep.* 409. *Baker* v. *Stackpole*, 9 *Cowen's Rep.* 433.) An account will be opened for manifest error. In the settlement, Boyd and Suydam were not charged as they ought to have been, with half the loss of the 300 bales of cotton, purchased on joint account. They were guilty of gross or culpable negligence in not insuring the cotton, and in storing it in a wooden building when they might have stored it in fire proof stores in Brooklyn. What is the custom in New-York in such cases appears from the case reported in 1 *Hall's Rep.* 84. A consignee of goods has authority to insure them, and charge the premium to the consignor. Boyd and Suydam's letter of the 13th February completed the contract between them and the complainant and Hernden, as to a joint adventure in the 300 bales of cotton. The designation and marking of the cotton were mere directions, and formed no part of the contract. The counsel cited *De Forest* v. *Fulton Fire Insurance Co.* (1 *Hall's Rep.* 84;) *Caffrey* v. *Darby*, (6 *Ves.* 496;) *Sucena* v. *Craufurd et al.*, (2 *New. Rep.* 290;) *Murray* v. *Bogert*, (14 *John. Rep.* 318;) *Chappedelaine* v. *Dechenaux et al.*, (4 *Cranch's Rep.* 306;) *De Forest* v. *Fulton Fire Ins. Co.* (1 *Hall's Rep.* 109, 110, 133.)

*H. R. Storrs*, for Boyd and Suydam. No contract to purchase the 300 bales of cotton on joint account was ever completed. The cotton was not marked and designated as directed; and Boyd and Suydam were not advised of the purchase. The marking and designation of the cotton was necessary to the completion of the contract. No contract could have been created, because the proposition was not accepted upon the same terms it was offered. Where a person instructs his factor to purchase goods, and prescribes the terms of the purchase and the manner of sending the property, and the property is sent in a different way from that directed, the

principal is not bound to receive it. Where circumstances exist which show an acquiescence in an account as settled, equity will not open it. Factors are not liable to their principals, except in cases of a breach of orders, gross neglect or fraud. The counsel cited *Eliason et al.* v. *Henshaw*, (4 *Wheaton's Rep.* 225;) *Vianna* v. *Barclay*, (3 *Cowen's Rep.* 283;) *Cairnes &* *Lord* v. *Bleecker*, (12 *John. Rep.* 300;) *Murray* v. *Toland*, (3 *John. Ch. Rep.* 569, 575;) *White* v. *Wilks*, (5 *Taunton's Rep.* 176;) *Merritt* v. *Johnson*, (7 *John. Rep.* 472 ;) *Bruce* v. *Pearson*, (3 *id. Rep.* 534;) *Cooke* v. *Oxley*, (3 *Durn. &* *E.* 653 ;) *Kennedy* v. *Lee*, (3 *Meriv. Rep.* 449.)

*C. Graham*, for the defendant, Hernden.

THE CHANCELLOR. The questions in controversy between the parties in this case relate to two items in the account as settled by Hernden, the former partner of Brisban. By the articles of copartnership between Brisban and Hernden, which are admitted by the stipulation in the cause, it appears that they entered into a limited partnership for the term of five years, commencing on the 10th of October, 1817. During the continuance of this copartnership, the defendants Boyd and Suydam were their agents or factors in the city of New-York. In 1822 Brisban and Hernden shipped 113 bales of cotton from Alabama, consigned to Boyd and Suydam, as commission merchants at New-York, to be sold for the account of the shippers; which cotton was received by them in June of that year. In consequence of a regulation of the board of health of New-York, it became necessary to store the cotton out of the city, and it was accordingly stored at Brooklyn, the usual place of deposit, under such circumstances; where it was soon after burned and lost. The complainant claims to charge Boyd and Suydam with this loss, on the ground that it was their duty to have insured the cotton thus deposited by them in a building which was liable to be destroyed by fire. The cases cited by the complainant's counsel, in relation to this claim, show that a commission merchant has such an interest in goods consigned to and received by him for sale, that he may insure in his own name to the full

value of the goods.    But it does not follow from this that it is his duty, without any express or implied directions to that effect from his principal, to insure the goods for the benefit of such principal.    And there is no evidence in this case of any usage of trade, from which the duty of the defendants to insure the goods can be implied.    If the defendants had made themselves liable for the loss, by their negligence in placing the cotton in an unsafe place of deposit when a safe one might easily have been obtained, as that fact is not admitted in the answer, the complainant should have filed a replication, and should also have established the fact of negligence by proof. As the case now stands, upon bill and answer, I think Boyd and Suydam are not chargeable with the loss upon the cotton which was destroyed by fire.

Upon the other question, as to the loss upon the 300 bales consigned to them on joint account, I see no reason to change the opinion expressed by me, in March, 1830, upon the application to dissolve the injunction.    By the letter of the 16th of January, 1822, Hernden, acting in behalf of his firm, informs Boyd and Suydam that he has not been able to execute their order for cotton, for the prices at which he was limited by them; that Brisban and Hernden had therefore drawn on them for money, to be invested in cotton which they had concluded to purchase on their own account ; and states that they expected to ship 600 bales or more.    But he proposes to Boyd and Suydam to permit him to consider 300 bales on joint account of themselves and Brisbin and Hernden, if they should elect to do so, and should give notice of such intention immediately after the receipt of that letter.    That letter was received at New-York about the 13th of February.    Boyd and Suydam immediately answered it, consenting to take the 300 bales on joint account, as proposed ; and they requested Hernden to designate and mark the cotton on joint account, and to advise them when it was shipped.    The moment this proposition was accepted by Boyd and Suydam, and the letter containing that acceptance had been transmitted to Brisban and Hernden, there was a valid contract for a joint adventure in the 300 bales of cotton ; which contract neither party had a right to rescind, without the consent of the other.    The coun-

1832.

Brisban
v.
Boyd.

sel for Boyd and Suydam supposes that the request to designate and mark the 300 bales on joint account, and to inform them when it was shipped, were conditions imposed upon the acceptance of the proposition. I do not, however, so understand the letter of the 13th of February. That letter was an unconditional acceptance of the offer contained in the letter of the 16th of January, to which it was an answer. And what was said as to designating and marking the cotton, and informing them of the time of shipment, was merely directory as to the manner in which they wished the 300 bales belonging to the joint concern to be sent. These directions were substantially complied with, by the letter of the 12th of April, designating which of the 393 bales shipped were not to be considered on joint account if the consumers did not choose to take an interest in a greater number than the 300 bales. The marks upon the 93 bales, which were not to be considered on joint account, being designated, all the other bales, whatever particular marks they might have thereon, were of course to be considered by both parties as their joint property. In the execution of orders sent to merchants abroad, it can never be expected that every part of the letter of instructions should be taken literally. And it could not have been expected by Boyd and Suydam that Hernden should place on each of these 300 bales of cotton a particular mark; specifying in terms that it belonged to the joint concern of Boyd and Suydam and Brisban and Hernden. Their only object was to have the cotton so designated and marked, that with the aid of the correspondence connected with the shipment, Boyd and Suydam, the consignees, might be able to ascertain what portion of the shipment belonged to the joint concern, and what to Brisban and Hernden exclusively. This object was fully accomplished by the manner in which the property of each concern was distinguished in the letter of the 12th of April; which letter reached New-York before the arrival of the cotton.

The cotton having come to a losing market, and that fact not being communicated to Brisban and Hernden, they cannot in equity be bound by any acquiescence in the letter of the 11th of May, 1822, in which letter Boyd and Suydam thought proper to treat it as the sole property of Brisban and Hernden; in-

timating at the same time, however, that it would probably produce a small profit.

Under the peculiar circumstances in which Hernden was placed, on his return to New-York, I am not prepared to say he would not himself have been entitled to relief against a settlement, in which any of his substantial rights were disregarded. It is not necessary, however, to examine that question in this case, as he is only a defendant in the cause. And the counsel for Boyd and Suydam and of Hernden, upon the hearing, expressly signified to the court that they had no wish to take testimony as against each other, so as to litigate the matter between themselves. Brisban alone appears to be interested in the proper adjustment of the matters in difference between his firm and Boyd and Suydam.

As Boyd and Suydam expressly deny all knowledge of the partnership having terminated, at the time of the settlement with Hernden, in the fall of 1823, if they had sold goods or parted with the property to him as a partner, Brisban might perhaps have been liable to them in the same manner as if the partnership had continued. But after the actual dissolution of the firm, one of the partners cannot bind the other by the acknowledgment of a debt which is not legally or equitably due ; or by giving a note for such supposed debt. (15 *John. Rep.* 409. 4 *Mumf. Rep.* 215. 9 *Cowen's Rep.* 433.) The want of knowledge of the dissolution of the partnership cannot benefit a customer who loses nothing by his ignorance of the fact, and who is only to be placed in the same situation as he would have been if the fact had been communicated to him in season. A customer who sells goods to one of the former partners, on the credit of the firm, and without notice of the dissolution, may have a legal claim against his copartners for the goods sold. But if he was informed of the dissolution of the partnership immediately after the sale, and while the goods remained in his own hands undelivered, a court of equity never would permit him to recover for those goods, against the former partners of the vendee. So in this case, it being established by the written correspondence stated in these pleadings, that one half of the loss on the 300 bales of cotton should have been deducted from the balance due to Boyd

and Suydam, on their accounts with Brisban and Hernden, they cannot be permitted to take advantage of the fact that they obtained the partnership note from Hernden without knowledge of the dissolution of the firm; and thereby enable themselves to recover a sum of money from Brisban which is not justly due.

The accounts between the parties must be re-stated, or taken before a master on a reference, for the purpose of ascertaining the balance, if any, which is really due to Boyd and Suydam from the firm of Brisban and Hernden; charging the former with one half of the loss upon the 300 bales of cotton, and rejecting the complainant's claim for the 113 bales of cotton destroyed by fire. And the question of costs and all other questions and directions are to be reserved until the coming in of the master's report.