JOHN B. TREVOR, JR., and JAMES B. COLGATE, Appellants
v. JOHN WOOD, GEORGE W. WOOD and JAMES CULLEN,
Respondents.

What amounts to an acceptance, so as to complete the contract. There must
be a concurrence of the minds of the parties upon a distinct proposition
manifested by an overt act.
The sending of a letter announcing a consent to the proposition, is a sufficient
manifestation of concurrence to consummate the contract.
Where the offer is by letter or by telegram, the acceptance signified in the
same manner is sufficient, irrespective of the time when it comes to the
knowledge of the proposing party.
An agreement to communicate by telegraph constitutes no warranty by either
party that the telegrams shall be duly received.
Proof of the sending a telegram, and of sending by mail a letter accepting the
proposition of defendants, is a sufficient subscription to take the case out of
the statute of frauds.

APPEAL from a judgment of the Supreme Court rendered
at General Term, in the first district, reversing a judgment
entered upon the report of Hon. WM. MITCHELL, referee,
and ordering a new trial before the same referee.

The appellants have stipulated that if the judgment be
affirmed, judgment absolute may be entered against them.

The appellants are dealers in bullion in New York, and
the respondents are dealers in bullion in New Orleans. In
1859 they agreed to deal with each other in the purchase
and sale of dollars, and that all communications between
them in reference to such transactions should be by tele-
graph.

On 30th January, 1860, the appellants telegraphed from
New York to the respondents, at New Orleans, asking at
what price they would sell one hundred thousand Mexican
dollars. On the 31st of the same month, the respondents
answered that they would deliver fifty thousand at seven
and one-quarter; and on the same day the appellants tele-
graphed from New York to the defendants, at New Orleans,
as follows:

"To John Wood & Co.—Your offer fifty thousand Mexi-
cans at seven and one-quarter accepted; send more if you
can.                          .TREVOR & COLGATE."

At the same time the appellants sent by mail to the
respondents a letter acknowledging the receipt of the
respondents' telegram, and copying the appellants' tele-
graphic answer. On the same day the respondents had also
sent by mail a letter to the appellants, copying respondents'
telegram of that date. On the next day (1st February,
1860), the appellants again telegraphed to the respondents as
follows:

"To John Wood & Co.—Accepted by telegraph yesterday,
your offer for fifty thousand Mexicans; send as many more,
same price. Reply:          TREVOR & COLGATE."

This telegram, as well as that of 31st of January, from
the appellants, did not reach the respondents until 10 A. M.
on 4th February, 1860, in consequence of some derangement
in a part of the line used by the appellants, but which was
not known to the appellants until 4th February, when the
telegraph company reported the line down. On 3d Febru-
ary the respondents telegraphed to the appellants as follows :.
"No answer to our dispatch — dollars are sold ;" and on the
same day they wrote by mail to the same effect. The appel-
lants received this dispatch on the same day, and answered it
on the same day as follows: "To John Wood & Co.—Your
offer was accepted on receipt;" and again the next day:
"The dollars must come, or we will hold you responsible.
Reply. Trevor & Colgate." And again on 4th February
insisting on the dollars being sent "by this or next steamer,"
and saying "don't fail to send the dollars at any price."

On the same 4th of February the respondents telegraphed
to appellants, "No dollars to be had. We may ship by
steamer twelfth, as you propose, if we have them." No
dollars were sent, and this action was brought to recover
damages for an alleged breach of contract in not delivering
them. The referee found for the plaintiff $219.33.

*George Thompson*, for the appellant.

*W. Z. Larnee*, for the respondent.

SCRUGHAM, J.   The offer of the respondents was made on the 31st of January, and they did not attempt to revoke it until the 3d of February.   The offer was accepted by the appellants before, but the respondents did not obtain knowledge of the acceptance until after this attempted revocation. The principal question, therefore, which arises in the case, is whether a contract was created by this acceptance before knowledge of it reached the respondents.

The case of *Mactier* v. *Frith*, in the late Court of Errors (6 Wend., 103), settles this precise question, and was so regarded by this court in *Vassar* v. *Camp* (1 Kern., 432), where it is said that the principle established in the case of *Mactier* v. *Frith* was that it was only necessary " that there should be a concurrence of the minds of the parties upon a distinct proposition manifested by an overt act; and that the sending of a letter announcing a consent to the proposal was a sufficient manifestation and consummated the contract from the time it was sent."

There is nothing in either the case of *Mactier* v. *Frith* nor in that of *Vassar* v. *Camp*, indicating that this effect is given to the sending of a letter, because it is sent by mail through the public post-office, and in fact the letter referred to in the first case could not have been so sent, for it was to go from the city of New York to Jacmel, in the island of St. Domingo, between which places there was at that time no communication by mail.

The sending of a letter accepting the proposition is regarded as an acceptance, because it is an overt act clearly manifesting the intention of the party sending it to close with the offer of him to whom it is sent, and thus marking that " *aggregatis mentium* " which is necessary to constitute a contract.

Mr. Justice MARCY in delivering the leading opinion in *Mactier* v. *Frith*, says: " What shall constitute an accept-

ance will depend in a great measure upon circumstances. The mere determination of the mind unacted on can never be an acceptance. Where the offer is by letter the usual mode of acceptance is by the sending of a letter announcing a consent to accept; where it is made by a messenger a determination to accept returned through him or sent by another would seem to be all the law requires if the contract may be consummated without writing. There are other modes which are equally conclusive upon the parties; keeping silence under certain circumstances is an assent to a proposition; anything that shall amount to a manifestation of a formed determination to accept, communicated or put in the proper way to be communicated to the party making the offer, would doubtless complete the contract."

It was agreed between these parties that their business should be transacted through the medium of the telegraph. The object of this agreement was to substitute the telegraph for other methods of communication, and to give to their transactions by it the same force and validity they would derive if they had been performed through other agencies. In accordance with this agreement the offer was made by telegraph to the appellants in New York, and the acceptance addressed to the respondents in New Orleans, and immediately dispatched from New York by order of the appellants. It cannot, therefore, be said that the appellants did not put their acceptance in a proper way to be communicated to the respondents, for they adopted the method of communication which had been used in the transaction by the respondents, and which had been selected by prior agreement between them as that by means of which their business should be transacted.

Under these circumstances the sending of the dispatch must be regarded as an acceptance of the respondents' offer and thereupon the contract became complete.

I cannot conceive upon what principle an agreement to communicate by telegraph can be held to be in effect a warranty by each party that his communication to the other shall be received. On the contrary, by agreeing before hand

to adopt that means of communication the parties mutually assume its hazards, which are principally as to the prompt receipt of the dispatches.

The referee finds as a fact that the respondents answered the telegram of' the appellants asking at what price they would sell 100,000 Mexican dollars by another telegram as follows, viz.:

" TREVOR & COLGATE, New York.

" Will deliver fifty thousand at seven and one-quarter 'per Moses Taylor.   Answer.

"JOHN WOOD & CO."

It was proved on the, trial that this telegram was sent by the respondents, and a letter of the same date, signed by them, repeating the telegram and stating that they had sent it, was read in evidence.

This affords sufficient evidence of subscription by the respondents to take the case out of the statute of frauds.

The judgment should be reversed.

All the judges concurring, except BOCKES and GROVER, JJ., who concurred only in the result.

Judgment reversed.