CROWN POINT IRON COMPANY, Appellant, *v.* ÆTNA INSURANCE COMPANY, Respondent.

CROWN POINT IRON COMPANY, Appellant, *v.* BOATMANS' FIRE AND MARINE INSURANCE COMPANY, Respondent.

CROWN POINT IRON COMPANY, Appellant, *v.* PENNSYLVANIA INSURANCE COMPANY, of Pittsburg, Respondent.

CROWN POINT IRON COMPANY, Appellant, *v.* HAMBURG-BREMEN FIRE INSURANCE COMPANY, Respondent.

CROWN POINT IRON COMPANY, Appellant, *v.* LANCASHIRE INSURANCE COMPANY, Respondent.

CROWN POINT IRON COMPANY, Appellant, *v.* PEOPLE'S INSURANCE COMPANY, Respondent.

*It seems* that, under the provision of the act of 1880, in relation to insurance companies (§ 3, chap. 110, Laws of 1880), which provides that "any * * * corporation transacting the business of fire * * * insurance in this state shall cancel any policy of insurance hereafter issued or renewed at any time by request of the party insured;" no discretion or option is left to the company, the sole requirement to set the command in motion being a request by the insured, and this terminates the insurance; no formal cancellation or physical defacement of the policy is required.

In order, however, to terminate the contract of insurance the request must be made by the insured or his authorized agent to the insurer or to one having adequate authority to act in the matter in its behalf.

Where the request is sent by mail, until it reaches the insurer or agent the cancellation is incomplete and the policy remains in force.

In an action upon the policy the burden is upon the defendant of proving that the request was received before the fire.

So far as the delivery of such a request is concerned the law does not recognize the agency of the mail as of any higher or more binding character than that of an express company or a private individual, although *it seems* it may be presumed that a letter duly mailed was received by the person to whom it was properly addressed.

In actions upon certain policies of fire insurance the defendants pleaded as a defense that the policies were canceled prior to the fire. Each of the policies contained a provision that the "insurance may be terminated at any time, at the request of the assured." It

appeared that one of the policies was issued by P., the insurer being a company of which he was the agent; the others were issued at his request, as plaintiff's agent, by L., as agent for other companies. Both P. and L. were authorized to issue policies for the companies they represented, and to accept policies for cancellation and terminate insurance, at the request of the insured. On July twenty-eighth plaintiff's general manager mailed to P. the policies in question, with a letter stating they were sent for cancellation, and a request that they be attended to "at once." P. received the letter, with policies inclosed, July twenty-ninth, at 1:30 P. M., and at 4 P. M. mailed to L. the ones issued by him with a letter stating that they were inclosed for cancellation. L. testified and the referee found that during the evening of the twenty-ninth or the morning of the thirtieth, L. took the package so sent from his drawer in the post-office and finding that it contained policies which he supposed were sent to him for cancellation, he replaced it, locked the drawer and went home. The next morning he took the letter from the post-office. On the twenty-ninth, about 10:30 P. M., the property insured was destroyed by fire. *Held,* that as to the policy issued by P., it appeared that it was canceled prior to the fire; but, as to the policies issued by L., defendants failed to show a cancellation ; that as to them P. was the agent of the plaintiff, not of the insurers, and the cancellation was incomplete until the request was received by L., and if the loss occurred before that time, a cause of action accrued which was not extinguished by a receipt of the policies and request thereafter; that to sustain this defense defendants were bound to establish that P.'s letter was received by L. before the fire, and having failed to do this, plaintiff was entitled to recover.

*Trevor* v. *Wood* (36 N. Y. 307); *Vassar* v. *Camp* (11 id. 441); *Mactier* v. *Frith* (6 Wend. 103); *Brisban* v. *Boyd* (4 Paige, 17), distinguished.

Reported below, 53 Hun, 220.

(Argued June 23, 1891; decided October 13, 1891.)

Appeal in each of the above-entitled actions from an order of the General Term of the Supreme Court in the third judicial department, made July 6, 1889, which reversed a judgment in favor of plaintiff, entered upon the report of a referee.

Each action was based on a policy of fire insurance issued by the defendant against whom it was brought, upon a quantity of charcoal belonging to the plaintiff. The defense, aside from a specific denial of certain allegations in the respective complaints, was that prior to the fire the plaintiff surrendered the several policies for cancellation and thereby terminated the

insurance thereunder. The actions were tried and argued together and only one appeal-book was laid before the court.

During the year 1886 George Page was the agent of the Ætna Insurance Company at Crown Point, and Meredith B. Little was the agent of the other defendants at Glens Falls. Each was authorized by the company that he represented to issue policies, accept policies for cancellation and terminate insurance at the request of the insured. Page issued the policy in behalf of the Ætna and, as the agent of the plaintiff, procured Little to issue the others. Alvin L. Inman was the general manager and Henry L. Reed the assistant general manager of the plaintiff, and the name and position of each was printed on the letter-heads used by that corporation and its officers.

On July 26, 1886, the plaintiff had twelve policies of insurance, including the six issued by the defendants, amounting to $14,000, upon a quantity of charcoal that it used in its business of manufacturing iron. About that time Inman and Reed visited the mines of the plaintiff and there learned that its stock of charcoal was much reduced, whereupon Inman told Reed to cancel some of the policies and if he could procure a return of the unearned premiums *pro rata* to cancel them all, but in any event to cancel some.

July twenty-eighth Reed, as assistant general manager, wrote to Page as follows: "Herewith I send you insurance policies on charcoal for cancellation, our stock is nearly used up. We should be allowed for the unexpired time *pro rata* on amount paid. * * * Please attend to it at once." The names, numbers, amounts and dates of expiration of nine insurance policies, including the six in question, were enumerated in the letter and the policies themselves were enclosed therewith in an envelope and sent by mail to Page, who received the package July twenty-ninth at 1:30 P. M. Page made no reply to this letter, but laid aside the Ætna policy and about four o'clock that afternoon mailed the others to Little at Glens Falls with a letter, in which he stated: "I enclose the following policies for cancellation, as the stock of charcoal is used

up." After giving the names, etc., of the eight policies, he continued : " Make the rebate as high as you can.   *   *   * Please make out a bill stating the amount you can allow on each policy for me to show Mr. Reed, the agent of the Crown Point Iron Company." Three of the policies thus enclosed, but including none involved in this action, were not issued by Little, but were procured by him at the request of Page acting for the plaintiff. The other five were the policies in suit, that issued by the Ætna, excepted.

During the evening of the twenty-ninth or the morning of the thirtieth, the referee failed to determine which, Little took the package containing these policies from his drawer in the post-office, opened it and found that it contained policies of the plaintiff which he supposed were sent to him for cancellation. Being on his way home he replaced the package in the drawer, locked it and went home. Between nine and ten o'clock on the morning of the thirtieth he took the package from the post-office to his own office, and after reading the letter from Page laid it down with other letters to be answered in its turn. About two hours later he received a telegram from Page to "return all policies to-day sent you last night on charcoal," and he at once mailed the policies and the dispatch to Page, who received them the next day. In the meantime, at half-past ten on the evening of the twenty-ninth the coal shed containing the charcoal was struck by lightning and a fire resulted, that injured the property in question to the amount of $4,681.29. Little had not heard of the fire when he mailed the policies to Page, but both Page and Reed knew of it when the former, at the request of the latter, sent the telegram to Little. When Page received the policies back he delivered them, together with the Ætna policy to the plaintiff, but a day or two afterward Reed returned the latter to him at his request and upon his assurance that it would not affect the liability of the parties and he wrote " canceled " opposite the entry thereof on his policy register. When he made his next monthly report he forwarded it to the home office. Page did not assume to terminate the policy issued to him, except in the

manner stated and Little took no action whatever toward terminating the policies that he issued. The plaintiff made no attempt to surrender three of the twelve policies that covered the charcoal on the twenty-eighth of July when Reed wrote the letter of that date to Page. It was conceded that those three policies, covering the charcoal to the amount of $2,833.34, were in force at the time of the fire.

*Richard L. Hand* for appellant. There was no cancellation of any policy or termination of any risk before the loss occurred. (*People* v. *Bank of N. America*, 75 N. Y. 547; *Jones* v. *M. Nat. Bank*, 55 Hun, 290; *Rathbun* v. *Snow*, 123 N. Y. 343, 350; 2 Morawetz on Corp. §§ 575, 577; *Nixon* v. *Palmer*, 8 N. Y. 398; *Redfield* v. *Redfield*, 110 id. 671; *Stone* v. *F. F. Ins. Co.*, 105 id. 543; *Van Valkenburgh* v. *L. Ins. Co.*, 51 id. 465.) The request or proposition, as in fact made by Reed, was not for a termination under the provisions of the policies, but for a cancellation upon special terms; and the agent not only had no power to accept this proposition, but he clearly did not assume to do so. (*Aldridge* v. *Aldridge*, 24 N. E. Rep. 1022; Code Civ. Pro. § 1338; *Roberts* v. *Tobias*, 120 N. Y. 1; *Day* v. *Town of New Lots*, 107 id. 148; *F. N. Bank* v. *Dana*, 79 id. 108.) Even if the plaintiff could be considered as having requested cancellation pursuant to the provisions of the policies, the risk was not terminated. (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410; *Shearman* v. *N. Ins. Co.*, 46 id. 526; *Roby* v. *A. C. Ins. Co.*, 120 id. 510; *Armstrong* v. *A. Ins. Co.*, 56 Hun, 399; *Train* v. *H. P. Ins. Co.*, 62 N. Y. 598; 68 id. 208; *Stevens* v. *Comstock*, 12 Cent. Rep. 327; *Eliason* v. *Henshaw*, 4 Wheat. 225; *Harnickell* v. *N. Y. L. Ins. Co.*, 111 N. Y. 390; 1 Wood on Fire Ins. [2d ed.] 288.) The plaintiff never assumed to cancel or to declare the policies terminated. The policies were simply sent in "for cancellation." This could not terminate the risk, if the assured had power to terminate. (*Van Valkenburgh* v. *L. F. Ins. Co.*, 51 N. Y. 465.) Plaintiff was entitled to judgment on the pleadings and stipulation. (*Hammond* v. *Earle*, 58 How. Pr.

426; *Fosdick* v. *Groff*, 22 id. 158.)   Defendants' exceptions are unavailing.   (*Nelson* v. *S. M. Ins. Co.*, 71 N. Y. 453; *L. Co.* v. *Higgins*, 105 U. S. 580; *Grattan* v. *M. L. Ins. Co.*, 92 N. Y. 274; *Dishno* v. *Reynolds*, 17 Hun, 137; *Woodruff* v. *Hurson*, 32 Barb. 557, 563; *Burlew* v. *Kubbell*, 1 T. & C. 235; *Pomeroy* v. *Pierce*, 5 Hun, 119; *Read* v. *Smith*, 1 id. 263; *Graham* v. *Graham*, 111 N. Y. 502.)   In the case of the Ætna Insurance Company, what took place in connection with adjusting the loss with representatives of the Star and Orient companies did not affect the liability of the Ætna, and constitutes no defense.   (*Luby* v. *H. R. R. R. Co.*, 17 N. Y. 131; *C. Co.* v. *H. Co.*, 44 id. 22; *Van Valkenburgh* v. *L. Ins. Co.*, 51 id. 465; *Stone* v. *F. F. Ins. Co.*, 105 id. 543; *Karelsen* v. *S. F. Ins. Co.*, 122 id. 545; *Lipman* v. *N. F. Ins. Co.*, 121 id. 454.)

*A. H. Sawyer* for respondent.   When the policy issued by the Ætna Insurance Company to the plaintiff was surrendered to George Page for cancellation, it was accepted by him, as agent of said defendant, for that purpose, and the insurance thereunder thereupon ceased and determined.   (*Van Wien* v. *S. U. & N. Ins. Co.*, 118 N. Y. 94.)   It was not necessary for the cancellation of the policy in question, upon its surrender by Reed to Page for that purpose, that the word "canceled" should be written or printed upon it, or that there should be any physical defacement of such policy, or that there should be any entry by the agent in any book kept by him for that purpose, of the fact that such policy had been canceled; nor was it necessary to effect the same that the unearned premium thereon should be returned or tendered to the plaintiff. (*Train* v. *H. P. Ins. Co.*, 62 N. Y. 598; 68 id. 208; *Walters* v. *S. J. F. & M. Ins. Co.*, 39 Wis. 489; *A. Ins. Co.* v. *Goodall*, 35 N. H. 328.)   The acts of the plaintiff subsequent to the fire show conclusively that at the time of the fire, and for many weeks thereafter, the plaintiff regarded the policy issued by the Ætna Insurance Company as canceled and annulled. (*Stone* v. *F. Ins. Co.*, 105 N. Y. 543; *Hillock* v. *F. Ins. Co.*,

54 Mich. 531.) The policies issued by the Boatman's Fire and Marine, the Lancashire, the Pennsylvania, the People's and the Hamburg-Bremen Fire Insurance Companies were each duly surrendered for cancellation, and the insurance thereunder terminated prior to the happening of the fire. (*Tayloe* v. *M. F. Ins. Co.*, 9 How. [U S.] 390 ; *Vassar* v. *Camp*, 11 N. Y. 441 ; *Mactier* v. *Frith*, 6 Wend. 103 ; *Brisban* v. *Boyd*, 4 Paige, 17 ; *Trevor* v. *Wood*, 36 N. Y. 307 ; *Ruggles* v. *A. C. Ins. Co.*, 114 id. 415.) The return of the policies in question by Little, upon Page's direction, in ignorance of the fact that the property covered by the policies had been destroyed by fire, did not restore the policies to life. (Wood on Ins. [2d ed.] 506 ; May on Ins. § 200 ; *N. Y. B. Ins. Co.* v. *N. Y. Ins. Co.*, 17 Wend. 359 ; *Beebee* v. *H. Ins. Co.*, 25 Conn. 51 ; *Train* v. *H. P. Ins. Co.*, 62 N. Y. 598.)

VANN, J. The question presented by these appeals is whether the policies were canceled or terminated before the fire occurred.

The statute regulating the cancellation of fire insurance policies provides that " any  * * *  corporation transacting the business of fire  * * *  insurance in this state shall cancel any policy of insurance hereafter issued or renewed at any time by request of the party insured." (Laws 1880, ch. 110, § 3.)

The command of the statute is clear, and no discretion or option is left to the company. The sole requirement to set the command in motion is a request by the insured, and after that request is made, the further continuance of the contract would be in contravention of the statute.

Each of the policies in question contains a provision that the " insurance may be terminated at any time at the request of the assured." While the method of terminating the insurance upon the motion of the insured is not specified, except that the insured party is to request it, the language of the contract indicates that the subject is within his control and that the terminating act is to be done by him alone, without any concurrent

or supplemental act on the part of the company. The word "may" is the language of the insurer, used for the benefit of the insured, and should receive a liberal construction to that end. As thus used it is not permissive, but imperative, and is in the nature of "must" or "shall." Otherwise the provision in which it occurs is useless, because the parties who made the contract could, of course, terminate it by mutual consent without any such stipulation. But, while it takes two to make a contract, one may end it, if the contract itself so provides. Thus, by the next sentence of the policies, provision is made for the termination of the insurance on motion of the insurer in these words : " The insurance may *also* be terminated at any time, at the option of the company, on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term." Here the method of effecting the termination is specified by requiring the insurer to give notice to the assured and return the unearned premium. (*Griffey* v. *N. Y. Central Ins. Co.*, 100 N. Y. 417 ; *Van Valkenburgh* v. *Lenox Fire Ins. Co.*, 51 id. 465.)

No consent of the insured is essential. No meeting of minds is required. No act on his part is necessary. The contract through the force of its own provisions, is ended by the action of the insurer only. (*Stone* v. *Franklin Fire Ins. Co.*, 105 N. Y. 543.)

Although the language of the parties is at the "request" of the assured in the one instance and on "notice" to the assured in the other, we think that in both it is within the power of the party desiring to end the contract to do so without either consent or action on the part of the other. When the insured surrenders the policy and requests that it be cancelled, he can do no more. Unless that ends the contract, he is powerless to end it and the company, while able itself to hang on or let go as it wishes, can hold him against his will. An insolvent insurer by refusing to cancel could prevent the insured from procuring other insurance.

The right of action for the unearned premium would not be complete without the assent of the insurer, and that, in

effect, would be a new agreement.  It was not necessary, as we think, that there should be any action on the part of the company.  No formal cancellation or physical defacement of the policy was required, because by virtue of the contract and the statute, the surrender of a policy with a request that it be terminated, operates as a cancellation, even if the insurer absolutely refuses to permit it to be canceled.

In *Train* v. *Holland Purchase Ins. Co.* (62 N. Y. 598; *S. C.*, 68 id. 208), it was held that a surrender of a policy by the insured and the acceptance of it by the authorized agent of the insurer with the intention on the part of both that it should no longer be a contract, was in effect a cancellation of it.  In that case, which arose prior to the passage of the statute, it did not appear on either occasion when it was before this court, as an examination of both appeal-books shows, that the policy surrendered contained any provision upon the subject of surrender or cancellation.  Hence the decision proceeded upon the theory of a new arrangement involving a meeting of minds, but even then nothing was required to be done by the company to terminate the contract.  (See also *Atlantic Ins. Co.* v. *Goodall,* 35 N. H. 328, 336; *Walters* v. *St. Joseph Fire & Marine Ins. Co.,* 39 Wis. 489.)

In order to terminate the insurance it was necessary that the " request " required by the statute and the contract should be made by one authorized to act in the matter in behalf of the plaintiff to one having adequate authority from the defendants. The act of Reed in surrendering the policies was the act of the plaintiff, because, aside from the authority plainly to be implied from the position he held, he was expressly authorized to surrender some of the policies covering the charcoal, and as he surrendered but part, the act came within the authorization. So the acts of Page and Little in receiving the policies for cancellation, were the acts of the respective defendants whom they represented, as it was conceded on the trial that they " had authority to accept policies of insurance for cancellation and to terminate insurance at the request of the insured."  As to the Ætna policy, therefore, the case stands as if the insured

had handed it to the insurer and had stated, as Reed wrote to Page on July 28, 1886, that it was " for cancellation. Our stock is nearly used up. We should be allowed for the unexpired time *pro rata* on amount paid.   *   *   *   Please attend to it at once." Thus we have an absolute surrender of the policy with an unqualified request that it be canceled " at once," because it was no longer needed. No condition was involved, for neither surrender nor request was dependent on the rate of the return premium. The writer simply expressed the opinion that there should be a *pro rata* allowance, but did not request cancellation if, nor forbid it unless, the amount suggested was allowed. Hence, we unite with the learned General Term in saying that " the plaintiff had done, in respect to the Ætna company, all that was needed." It had given up its policy to a person authorized to receive it and had requested cancellation. The policy having been actually terminated, was not revived by taking it back under the circumstances stated. (*Train* v. *Holland Pur. Ins. Co., supra.*)

The order appealed from in the action against that company should, therefore, be affirmed and judgment absolute rendered against the plaintiff in accordance with the stipulation contained in its notice of appeal.

The cases against the other defendants are less clear, and the result reached less satisfactory, because it rests, of necessity, upon an arbitrary presumption, and may or may not be in accordance with justice. What has already been said applies to those cases down to the time that the policies involved therein reached the hands of Page, who, as to those policies, was not the agent of the insurer, but of the insured. When they reached his hands, therefore, his possession was the possession of the plaintiff. He promptly mailed them, however, to Little, who stood in the place of the insurer, so far as the receipt of policies for cancellation was concerned. Page had no power to impose conditions, and, as we read his letter, he assumed none. He followed the language of his instructions by stating that he enclosed the policies " for cancellation," giving as the reason that the stock of charcoal was used up.

He requested as high a rebate as possible, and that a statement of the amount allowed on each policy should be sent him to show Reed, but he named neither sum nor rate even by way of suggestion, and left nothing open so that he could recede if the allowance was not satisfactory. If he was simply trying to find out what terms he could get in case of a surrender, why did he send on the policies before he knew what the companies would do?

It is contended by the defendants that the mailing of the policies with a letter stating the object sufficed to cancel them because it was equivalent to the acceptance of a proposition by mail, and the following cases are cited, among others, in support of the position: *Trevor* v. *Wood* (36 N. Y. 307); *Vassar* v. *Camp* (11 id. 441); *Mactier* v. *Frith* (6 Wend. 103), and *Brisban* v. *Boyd* (4 Paige, 17). These were cases of contracting wholly by letter or telegram. It was long ago held that if an offer made by mail is accepted by mail, the contract is complete from the moment the letter of acceptance is mailed, even if it is never received. (*Vassar* v. *Camp, supra.*) Those cases have no application here, because no negotiation was pending and no contract was proposed. The plaintiff did not make any offer to the insurance companies that might or might not be accepted. It sought to do an act that would be binding on the companies, whether they were willing or not. That act was a surrender of the policies with the request that they be terminated, and the act could not be complete until the request reached the companies or their agent. The policies and notice might have been sent by a messenger, who would have been the agent of the plaintiff for that purpose. Having been sent by mail, it was none the less the agency of the plaintiff than if a messenger had been selected. It was necessary for the plaintiff, in order to terminate the policies, to have its notice actually reach the companies, or their representative, and the instrument selected for that purpose was the agent of the plaintiff, not of the defendant. If the plaintiff lost control of the letter as soon as it was mailed, that fact has no bearing except upon the nature of its relation

to the agent that it empowered to deliver the package. It seems, however, that the writer of a letter may withdraw it from the office in which it is deposited, or from the office to which it is sent. (U. S. Postal Laws and Regulations, §§ 531, 533.) If the letter never reached the companies they would not have been bound, or, if it reached them after a long delay, they would have been bound only from the date of receipt. So far as the delivery of such a letter is concerned, the law does not recognize the agency of the mail as of any higher or more binding character than that of an express company or a private individual, although it may presume that a letter duly mailed was received by the person to whom it was properly addressed. (2 Whar. Ev. § 1324; Powell's Ev. 81–86.) When did the notice reach the companies or their agent Mr. Little? If it reached him before the fire the policies were terminated *ipso facto* and were not in force when the loss occured. If it reached him after the fire then the policies were in force when the loss occurred and the character of the contract was thereby changed from a contingent to a certain liability on the part of the insurer. A cause of action based on an absolute debt forthwith accrued to the plaintiff that was not extinguished by the subsequent receipt of the policies by Little. (*Stone* v. *Franklin Fire Ins. Co.*, 105 N. Y. 543, 550; *Van Valkenburgh* v. *Lenox Fire Ins. Co.*, 51 id. 465, 467.) Whether such receipt would take effect from its date, as to losses subsequently occurring, is not here involved and it is only necessary now to decide that it had no retroactive effect as to losses that had already occurred. If the letter was in process of transmission at the time of the fire, the request required, both by statute and by contract, had not been effectually made and the cancellation was incomplete.

Unfortunately the learned referee did not determine whether the policies reached Little before or after the fire. He was requested by the defendants to find in these words: " At or about nine o'clock in the evening of July twenty-ninth Mr. Little, while on his way to his residence, called at the post-office and opened his post-office drawer and found therein the

package containing the policies in question forwarded to him by George Page, opened the said package and found that it contained policies of the Crown Point Iron Co., supposed they were sent him for cancellation and placed the package back in his post-office drawer, locked it and went home." The referee refused to so find unless the proposed finding was amended by inserting after " July twenty-ninth " the words, " or morning of July thirtieth." The defendants excepted to the refusal, but the testimony of Mr. Little, the only witness upon the subject, was almost in the words of the finding as amended. The referee was clearly justified in refusing to find that the letter reached the agent of the defendants on the twenty-ninth. Whether this refusal to find is equivalent to a finding against the fact or not (*Standard Oil Co.* v. *Triumph Ins. Co.*, 64 N. Y. 85), there was a failure to find the fact essential to a successful defense. The plaintiff was entitled to recover unless the defendants established and the referee found, either that the policies had been terminated or the facts from which the law would infer a termination. The burden of proof was upon them to establish the facts necessary to make out that defense, and one of them was that Page's letter reached Little before the fire occurred. Having failed to do this, they failed utterly and, therefore, the order appealed from in each of the actions, except that against the Ætna Insurance Company, should be reversed and the judgment entered on the report of the referee affirmed, with costs.

All concur.

Judgment accordingly.