578

Eva Lofaro, Plaintiff, *v.* John Hancock Mutual Life Insurance Company, Defendant.

Supreme Court, Oneida County, August 24, 1932.

*M. S. Ogonowski [Woodward W. Guile* of counsel], for the plaintiff.

*Lee, Brennan & Bastow*, for the defendant.

Smith, E. N., J. The defendant John Hancock Mutual Life Insurance Company, of Boston, Massachusetts, issued a life insurance policy, numbered 1670895, upon the life of Anthony Lofaro, of Utica, New York; the policy was dated March 15, 1929, and provided for the payment to the beneficiary, Eva Lofaro, wife of the insured and the plaintiff herein, in case of the death of the insured, of the sum of ten thousand dollars. The policy contains this provision: " This policy and the application herefor constitute the entire contract between the parties. * * * No modification or alteration thereof or endorsement thereon will be valid unless made by the President, a Vice-President, the Secretary or an Assistant Secretary, and no other person is authorized to modify or waive any of the terms and conditions of this policy * * *." Attached to the policy is what is called a " Supplementary Contract — accidental death benefit provision " bearing the same date as the policy, executed in the same manner and " issued as a part of and attached to policy No. 1670895," which, for an additional

premium, doubles the amount to be paid in case of the death of the insured, provided the death is the result of bodily injury " caused solely by external violent and accidental means, of which there is a visible wound or contusion on the exterior of the body." This supplementary contract provides that the additional premium is payable " in addition to and under the same conditions as the regular premium under this policy."

The policy also contains this provision: " This accidental death benefit provision may be discontinued *on any policy anniversary* upon *request* of the insured and *presentation of the policy to the Company* for *cancellation of this provision.*"

In the evening of March 20, 1930, while in his store in the city of Utica, the insured suffered gunshot wounds at the hands of persons unknown, and at about one o'clock A. M., March 21, 1930, he died as a consequence of the wounds so received. The defendant, upon proof of loss, paid to the widow the amount due disregarding the supplementary contract, to wit, the sum of ten thousand dollars, less certain deductions; it refused to pay the double indemnity; hence this action. The ground of the refusal is that the supplementary contract had been discontinued and is of no force and effect. The defendant had a local agency in the city of Utica, New York, which solicited life insurance; this local agency did not, however, issue nor did it have the power to issue life insurance policies or in any wise to modify or change the terms of a life insurance contract. Prior to the 15th day of March, 1930, a policy anniversary date, the insured had told the local agent that he wished to discontinue the double indemnity contract; the representative of the local agency endeavored to dissuade him; several conversations were had between them on the subject; the insured was determined not to pay the additional premium, and went so far as to state that he would discontinue all payments of premium on the policy unless the supplementary contract was discontinued. It would seem that the practice of the defendant company was to require a written request for a discontinuance. Prior to the signing of this written request by the insured the insured had delivered the policy to the local agency, which kept it in Utica. On the 19th of March, 1930, the local agent presented to the insured for signature a written request, prepared by and printed on a form of the company; this form refers to policy No. *1664210*, although the policy to which the double indemnity contract is attached is numbered *1670895*. This form contains this typewritten statement: " I *desire to discontinue* the special premium for the Double Indemnity Benefit Provision of said policy, which provision I hereby agree *shall be cancelled and eliminated from said policy by rewriting*

and I hereby release said Company from all liability by reason of said provision." This request was signed by the insured, but is undated. On the 20th day of March following, the local agency in Utica transmitted this request, together with the policy, to the defendant at Boston, Massachusetts, by mail; it arrived at the office of the defendant at 8:30 A. M., March 21, 1930, some seven hours after the insured had died. Under these circumstances, it is the contention of the defendant that this supplementary contract was not in effect at the time of the death of Anthony Lofaro.

By the express terms of the supplementary contract itself it was made and issued as a part of and attached to the policy, and it is as much a part of the original contract as if its provisions had been incorporated in it instead of being an attachment to it.

Fire insurance policies may be canceled by the return of the policy for cancellation; not so with life insurance policies, and not so in reference to this particular policy; and this supplementary contract could only be discontinued upon the written request of the insured and presentation of the policy to the company for cancellation. This involved three acts: (1) the written request of the insured, (2) the presentation of the policy to the company for cancellation, and (3) the cancellation by the company.

Section 122 of the Insurance Law of the State of New York makes it mandatory for fire insurance companies, upon request of the assured, to cancel the policy and return the unearned premium; but the mere mailing of a fire insurance policy to an insurer, in fire insurance policy cases, with a letter requesting that it be canceled, does not operate to cancel the policy; it must be received by the insurer in order to make the cancellation effective. So, where a policy is mailed to an insurance company for cancellation and the property insured is destroyed by fire prior to its receipt by the agent the company remains bound on the policy. (*Crown Point Iron Co.* v. *Ætna Insurance Co.*, 127 N. Y. 608.) In that case, on July 28th the general manager of the plaintiff mailed to one Page, an insurance agent who had issued one of the several policies involved, several fire insurance policies; Page, in turn, forwarded the policies which he had not issued to an insurance agent, one Little, at Glens Falls, who had issued the other policies; Page received the letter inclosing the policies on July 28th at 1:30 P. M. and mailed them to Little at 4 P. M.; Little received them on July 30th; on July 29th, at about 10:30 P. M., the insured property was destroyed by fire. It was held that the policy issued by Page was canceled before the fire, and that the policies issued by Little, not having been received by him prior to the fire, were still in force. The court held that Page, in receiving the policies not issued by

him, was the agent of the insured and not of the insurer; that the policies in his possession were in the possession· of the plaintiff. " He promptly mailed them, however, to Little, who stood in the place of the insurer, so far as the receipt of policies for cancellation was concerned. Page had no power to impose conditions, and, as we read his letter, he assumed none. He followed the language of his instructions by stating that he enclosed the policies ' for cancellation,' * * *. The plaintiff did not make any offer to the insurance companies that might or might not be accepted. It sought to do an act that would be binding on the companies, whether they were willing or not. That act was a surrender of the policies with the request that they be terminated, and the act could not be complete until the request reached the companies or their agent. The policies and notice might have been sent by a messenger, who would have been the agent of the plaintiff for that purpose. Having been sent by mail, it was none the less the agency of the plaintiff than if a messenger had been selected. It was necessary for the plaintiff, in order to terminate the policies, to have its notice actually reach the companies, or their representative, and the instrument selected for that purpose was the agent of the plaintiff, not of the defendant. If the plaintiff lost control of the letter as soon as it was mailed, that fact has no bearing upon the nature of its relation to the agent that it empowered to deliver the package. It seems, however, that *the writer of a letter may withdraw it from the office in which it is deposited, or from the office to which it is sent.* * * * When did the notice reach the companies or their agent Mr. Little? If it reached him before the fire the policies were terminated *ipso facto* and were not in force when the loss occurred. If it reached him after the fire then the policies were in force when the loss occurred and the character of the contract was thereby changed from a contingent to a certain liability on the part of the insurer. A cause of action based on an absolute debt forthwith accrued to the plaintiff that was not extinguished by the subsequent receipt of the policies by Little. * * * If the letter was in process of transmission at the time of the fire, the request required, both by statute and by contract, had not been effectually made and the cancellation was incomplete."

The views expressed in this case are restated in *Gately-Haire Co.* v. *Niagara Fire Insurance Co.* (221 N. Y. 162). Such is the attitude of our courts in reference to fire insurance policies, even where it is mandatory upon an insurance company, under section 122 of the Insurance Law, to cancel a fire insurance policy upon request of the assured.

In the instant case, if the insured would cancel the double

indemnity contract, he must present the policy *to the company* for cancellation and make a written request for such cancellation. The fact is that he did make a written request and did leave it to the *local agent* of the company to forward the policy, with the request, to the company. The situation would have been no different had he delivered the policy, with the request, to his wife for transmission to the company, or if he himself had mailed the policy and the request to the company. The fact is that neither the request nor the policy was received by the company for cancellation of the double indemnity contract until after the insured had met his death.

The double indemnity contract was attached to and was a part of the life insurance policy. The fact that the policy, with the supplementary contract attached, was to be presented to the company for cancellation implies some act of cancellation on the part of the company; and, furthermore, the form of the request for cancellation, prepared by the defendant, implies some act on its part further than the mere receipt of the policy and the request, for the policy provides that the insured agrees that the double indemnity provision " shall be canceled and eliminated from said policy *by re-writing.*" Obviously, the double indemnity provision had to be eliminated from the contract by some act of the defendant. There was no cancellation of this double indemnity contract at any time; certainly not before the loss occurred.

Section 58 of the Insurance Law of this state provides that the policy must contain the whole contract. It was so held in *Minsker* v. *John Hancock Mutual Life Insurance Co.* (254 N. Y. 333).

This contract was in full force and effect, unaltered, at the time of the death of the insured, and it had in no respect been canceled. Unlike the case of fire insurance policies, the right of cancellation was not mandatory at the request of an assured; there must be the request of the insured and the act of the insurer; the act of one is not sufficient.

The company had insisted, for its own protection, as a condition of cancellation, that the policy of insurance itself be forwarded to it; it knew the law that a policy of life insurance must contain the full contract. This wise provision of the law works, as a rule, for the protection of insurance companies against fraud or misrepresentation, and was so intended; but it likewise works for the protection of the insured. Because in the instant case it may appear that the application of the rule may work a hardship constitutes no ground for the abrogation of the rule and formulates no basis for the modification of the clear terms of the contract.

The form of application for the cancellation of the supplementary

contract, prepared by the defendant for execution by the insured, contains the clause " and I hereby release said Company from all liability by reason of said provision." This release was never delivered to the company prior to the death of the insured and therefore was not effective. (*Stiebel* v. *Grosberg*, 202 N. Y. 266.)

For the foregoing reasons the plaintiff is entitled to a direction of a verdict against the defendant for the amount of the double indemnity provision, to wit, the sum of ten thousand dollars, with interest.

Verdict is directed accordingly.