## UNION MARINE & GENERAL INS. CO., Limited, v. KULJIS.

### No. 7287.

Circuit Court of Appeals, Ninth Circuit.

April 12, 1934.

S. Hasket Derby, of San Francisco, Cal., and Howard G. Cosgrove of Seattle, Wash. (Derby, Sharp, Quinby & Tweedt, of San Francisco, Cal., and Cosgrove & Terhune, of Seattle, Wash. of counsel), for appellant.

Sather & Livesey, of Bellingham, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

June 30, 1932, appellant, defendant below, through its duly authorized agent, D. A. Duryee & Co., at Everett, Wash., issued to appellee a marine insurance policy insuring appellee's gas boat, the Tiger, against loss by fire. September 14, 1932, the boat was destroyed by fire, and appellee successfully prosecuted in the District Court this suit to recover the amount of the policy. Appellant contended in the trial court and contends on this appeal that the policy was voluntarily canceled by appellee prior to the loss. The trial court's finding on this issue, assailed by appellant as unsupported by the evidence, is as follows: "That prior to the fire the plaintiff had requested the cancellation of said policy, but some correspondence arose between the defendant and the plaintiff with relation thereto, and the policy was not cancelled prior to the said fire or at any time."

The policy contains the following cancellation clause: "Either party may cancel this policy by giving 10 days' notice in writing. If cancelled at request of underwriters pro rata daily rates to be made. If cancelled at request of assured, returns to be made on basis of standard short rate scale."

Prior to the loss, appellee had not paid the premium on the policy. August 29, 1932, about two weeks before the boat was destroyed, appellee wrote to Duryee & Co., appellant's agent, as follows:

"Regarding my insurance policy for the boat Tiger, I inquired at all the Company's buyers and I am unable to find the policy.

"I wish to cancel this policy because I find I am unable to carry it any longer as the fishing season is very poor this year. I will renew this policy next year if I find I can carry it again. I am very sorry to have to cancel this policy."

August 30 Duryee & Co. replied thereto, as follows:

"In reply to your letter of August 29 in reference to Union Marine and General policy No. 1898, we are unable to understand where this policy could have gone as it was mailed to you some time ago. However, we will be glad to send you a copy of the policy if you so desire.

"In reference to cancellation of this policy, we wish to advise that there is a 3 per cent. guaranteed premium on the policy. This is true of all marine policies covering boats in Puget Sound this year. There is a total premium of $464.10. If the policy is cancelled at this time, you will receive a refund of $249.90. You can continue this policy until the end of the fishing season at no additional cost to you. In other words, if you cancelled this policy after the 5th of November you will receive back as much money as you would if you cancelled it at this time. The reason for this is because of the 3 per cent. guaranteed premium.

"It is our suggestion that you continue the policy at least until the end of the fishing season. Kindly advise your wishes in this matter."

September 1 the insured again wrote Duryee & Co., as follows:

"Regarding my letter of the 29th, I wish to cancel my policy from that day on.

"But I do not understand why I have to pay so much money for a policy which I carried for less than two months. Here in Bellingham people cancel their policies and they pay for only the length of time they carry it, and I intend to do the same.

"I believe there is enough refund from the last year's policy to pay for these two months I carried the policy.

"The reason I have to cancel this policy is because I just made enough money to pay for my board and fuel, so I just can not carry it any longer as I can not pay for it.

"I am sorry I have to cancel this policy but it is the only way out. The next time I take out a policy I shall take it out from your company as I was very much satisfied with it.

"Hoping to hear from you soon."

September 6 Duryee & Co. wrote the insured:

"In reply to your letter of September 1, we believe you are wrong in your statement that in Bellingham people cancel their policies and pay for only the length of time they carry the insurance. This is not true, however, under marine policies, and if you will ask any marine agent in Bellingham, they will inform you that the guaranteed premium must apply. This is true of all boats owned by individuals.

"However, we are taking this matter up with the company and will advise as soon as we hear from them."

September 6 Duryee & Co. also wrote to J. A. Graessner Company, appellant's agent at Seattle, Wash., inclosing copies of the cor-

respondence with appellee regarding the cancellation of his insurance policy, and asking that Graessner Company "look into this matter and advise in order that we may give him an answer to his letter of September 1." September 9 Graessner Company replied thereto as follows:

"We duly received your letter of September 6 and wish to advise that if the premium on this vessel has been paid to you, we are required to demand a guaranteed premium of 3 per cent. under the terms and conditions of the Motor Vessel Agreement.

"If you have been unable to collect the premium, it will be in order to cancel the policy on a pro rata basis for nonpayment of premium, in which event, please return the policy to us immediately or a Lost Policy Receipt. We might advise however, if it is necessary to cancel on account of non payment of premium, our company will prohibit us from writing insurance for this owner again, and we therefore sincerely trust this action will be unnecessary.

"We note this owner states certain policies issued in Bellingham have allowed owners pro rata cancellation, which undoubtedly means that the Bellingham agent has intentionally cancelled certain policies for non payment of premium.

"As you know, all boats coming within the terms of the Motor Vessel Agreement carry a guaranteed premium of 3 per cent. for Puget Sound operations.

"Trusting you will advise us final disposition of this case, at your early convenience, we are."

Thereafter, by letter dated September 12, two days before the loss, Duryee & Co. wrote the insured that they had picked up the policy in question "at the Fishermen's Packing Corporation and have sent it back to the company for cancellation," and "Will advise you the amount of the earned premium under this policy as soon as we hear from the company."

The foregoing correspondence constitutes all the material evidence on the issue of cancellation, and we agree with appellant that this evidence is insufficient to support the finding of the court that the policy was not in fact canceled.

The policy contains a provision that it may be canceled by either party upon ten days' written notice. The insured's letters to Duryee & Co., dated more than ten days prior to the loss, contain unmistakable language evidencing his determination to cancel the insurance. In his first letter the insured said, "I wish to cancel this policy because I find I am unable to carry it any longer;" and on September 1 he reiterated his emphatic and unequivocal request for cancellation of the policy, "Regarding my letter of the 29th, I wish to cancel my policy from that day on." In 32 C. J. 1260, it is said: "If by statute or contract insured has the privilege of cancelling the policy at his pleasure, the company's consent is not a prerequisite to cancellation."

That appellant's agents considered the policy canceled is shown by their action in taking possession of the policy on September 12 and sending it to the company for cancellation and adjustment of the premium, after having unsuccessfully attempted to persuade appellee to continue the policy in force until November 5 by paying the minimum 3 per cent. guaranteed premium.

In Parsons & Arbaugh v. Northwestern Nat. Ins. Co., 133 Iowa, 532, 110 N. W. 907, the policy contained a provision that it might be canceled at any time at the request of the insured. The court there said: "The policy of insurance was surrendered to the company for cancellation by the insured several days before the fire and by it accepted for that purpose, but the unearned premium had not been returned [as requested by the insured]. The insured had done all he could to effect the cancellation of the policy prior to the loss and so had the company, save that the unearned premium had not been actually paid to the insured. Though the assent of two is required to make a contract, one can terminate it. To facilitate doing so is the object of provisions concerning cancellation contained in insurance policies for these are not needed where parties can mutually agree. * * * The insured having so requested, cancellation necessarily followed. He could do no more save surrender the policy. Having done so, the contract was canceled—was at an end. * * * The request is all that is essential to a cancellation, but the policy must be surrendered to secure the return of the unearned premium. The design of the paragraph was to enable one party to the contract to cancel it without the consent of the other, and, to this end, precisely what was necessary to accomplish this result was prescribed."

See, also, Crown Point Iron Co. v. Ætna Ins. Co., 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147; Gately-Haire Co. v. Niagara Fire Ins. Co., 221 N. Y. 162, 116 N. E. 1015, Ann. Cas. 1918C, 115; Johnson & Stroud v.

Rhode Island Ins. Co., 174 N. C. 201, 93 S. E. 735.

The authorities relied upon by appellee are distinguishable from the case at bar. In American Trust Co. v. Life Ins. Co., 173 N. C. 558, 92 S. E. 706, 707, the policy contained no provision authorizing its rescission or cancellation at the option of one of the parties. In Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa, 1133, 184 N. W. 756, the cancellation relied upon by the insurance company was held insufficient because not in the form prescribed by the cancellation clause of the policy. In Home Ins. Co. v. Chattachoochee Lumber Co., 126 Ga. 334, 55 S. E. 11, the loss occurred before the expiration of the five days' notice of cancellation to the insured required by the policy, and there was no agreement of the parties for immediate cancellation. In Barbour v. St. Paul Fire & Marine Ins. Co., 101 Wash. 46, 171 P. 1030, 1031, the question was whether the policy had been canceled by mutual consent prior to the loss, and the court held that the evidence was insufficient to prove such cancellation, saying: "It is plain that she [the insured] intended to cancel the policy, and that the insurance company was willing to do so. But before the insurance company would actually cancel the policy, it required that a receipt be signed. This receipt was not signed, and, as nothing further was done, the policy remained in full force and effect."

In that case it does not appear whether the insured had in fact a right to cancel the policy, "Assuming, but not deciding," said the court (page 50 of 101 Wash., 171 P. 1030, 1031) "that Mrs. Barbour [the insured] had authority to order a cancellation of the policy, we do not think the policy was actually canceled." In the case at bar, the right of the insured to cancel the policy is unquestioned.

The cancellation clause of the policy provides that, if cancellation be at the request of the assured, the premium shall be computed on the basis of standard short rate scale. Appellee contends that his letter of September 1 discloses that it was his intention to cancel the policy on a pro rata basis, but that the company did not consent thereto, but insisted on payment of the 3 per cent. guaranteed premium, which would continue the policy in force until November 5. "It thus appears," contends appellee, "that before the ten day period had elapsed following August 29th, plaintiff and defendant were negotiating for a satisfactory basis of terminating the policy and that they had not reached a basis satisfactory to both sides at the time the boat was destroyed by fire on September 14." Accordingly, argues appellee, the rule to be applied is this: "Where cancellation is attempted in a method different from that specifically authorized by the policy of insurance or by statute, such cancellation will not be effective unless the minds of both parties to the agreement have met. It was on this basis that the trial judge decided in favor of the plaintiff." In other words, it is the contention of the insured that his request for cancellation of the policy was conditioned upon acceptance by the company of a pro rata cancellation. For all that appears in the record, appellee's policy may have been canceled on a pro rata basis. Graessner Company's letter of September 9 to Duryee & Co. discloses that it is customary to cancel on a pro rata basis in cases where it is impossible to collect the premium. However, the rate or basis of cancellation is entirely immaterial to the question before us, namely, whether the contract was in fact canceled by the insured. By his letters, the insured clearly and unequivocally requested cancellation of the policy. His request for cancellation was in no wise conditional. See Ellis v. Hartford Fire Ins. Co. (Tex. Civ. App.) 21 S.W.(2d) 88, 91; Crown Point Iron Co. v. Ætna Ins. Co., supra, 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147. The court erred therefore in refusing to find for appellant.

Reversed.