[No. 14322. Department One. April 16, 1918.]

E. F. MILLS, *Appellant*, v. TITLE GUARANTY & SURETY COMPANY, *Respondent*.[1]

PRINCIPAL AND SURETY—SURETY COMPANIES—AUTHORITY OF AGENTS —APPARENT AUTHORITY—EVIDENCE—SUFFICIENCY. Local agents of a surety company are as a matter of law without apparent authority to execute a stay bond, where it was in excess of the express authority in their written power of attorney, no inquiry was made as to such express authority, they had no forms for the execution of bonds of that nature, and the bond was prepared by the assured's attorney wholly in typewriting, and some doubt was at first entertained as to their power to execute the bond (ELLIS, C. J., and MAIN, J., dissenting).

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered April 16, 1917, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action in tort. Affirmed.

*Fred E. Butler* and *E. J. Doyle*, for appellant.

*C. H. Baldwin, F. W. Dewart*, and *John C. Applewhite (Will H. Fouts*, of counsel), for respondent.

PARKER, J.—The plaintiff Mills seeks recovery of damages for injuries which he claims resulted to him

[1] Reported in 172 Pac. 248.

from the repudiation by the defendant surety company
of liability upon a bond purported to have been exe-
cuted by its agent G. W. Fuller and its attorney in fact
E. E. Halsey, residing at Clarkston in Asotin county,
on May 24, 1911. The bond purported to be one to
secure a stay of proceedings upon appeal from a judg-
ment rendered against the plaintiff Mills in the su-
perior court for Asotin county, and it is claimed by
him to have failed to effect a stay of execution because
of the surety company's wrongful repudiation of lia-
bility thereon. Trial in the superior court for Asotin
county with a jury resulted in judgment rendered in
favor of the surety company upon a verdict returned
in its favor by direction of the court at the close of the
plaintiff's evidence. From this disposition of the cause
the plaintiff Mills has appealed to this court.

On December 12, 1910, there was rendered in the
superior court for Asotin county a money judgment in
favor of C. H. Baldwin and against E. F. Mills, this
appellant. On April 25, 1911, Baldwin caused an exe-
cution to be issued upon that judgment looking to
the sale of the property of Mills in satisfaction thereof.
The sheriff of Asotin county, acting under the execu-
tion levied upon certain lands situated in that county,
belonging to Mills, and gave due notice of the sale
thereof to be held on May 27, 1911. In the meantime,
Mills had appealed from that judgment to this court,
but had not filed in the case any bond to stay proceed-
ings thereon. On May 24, 1911, three days prior to
the time set for the sale of the land of Mills, he applied
to G. W. Fuller, the local agent of the surety company
residing at Clarkston, for a bond to stay proceedings
under the execution. On that day, a bond was signed
by G. W. Fuller as agent and E. E. Halsey as attorney
in fact for the surety company, purporting upon its

face to be a bond to secure stay of proceedings upon the judgment rendered against Mills. Upon the day following, he filed the bond with the clerk of the superior court for Asotin county. No demand was ever made by Mills or any one for him that the clerk "issue to the sheriff a certificate that proceedings have been stayed" as provided by § 1727, Rem. Code, for the recall of an execution upon the giving of a stay bond following an appeal. So the sheriff, having no official notice of any stay of proceedings, proceeded to and did sell the land of Mills under the execution on April 27, 1911, in pursuance of the notice theretofore given by him, and filed his return accordingly on that day. Mills did not, within the ten days prescribed by § 591, Rem. Code, nor at any other time, file any objections to the confirmation by the court of the sale so made, nor does the record before us indicate that the sale ever was confirmed by the court, but it at least inferentially suggests to the contrary. On December 20, 1911, this court reversed the judgment rendered against Mills in favor of Baldwin, and remanded the case to the superior court for Asotin county for a new trial. *Baldwin v. Mills*, 66 Wash. 302, 119 Pac. 816. On March 8, 1912, Mills redeemed his land from the execution sale, paying to the sheriff therefor the sum of $1,726, which he claims as the measure of damages he is entitled to recover in this action. On November 13, 1912, the superior court for Asotin county, as provided by § 1742, Rem. Code, entered a judgment and order of restitution in favor of Mills and against Baldwin, and directed execution to be issued thereon against Baldwin for the amount collected and realized by Baldwin from the execution sale of the land of Mills. Execution was accordingly issued upon that judgment and order and returned by the sheriff, who certified

that he was unable to find any property belonging to Baldwin subject to execution.

The only claim of error we find it necessary to here notice is that the trial court erred in directing a verdict in favor of the surety company. One of the grounds upon which this disposition of the cause was rested by the trial court was, in substance, that it must be decided, as a matter of law, that the paper signed by Fuller and Halsey as agent and attorney in fact for the surety company, purporting to be a stay bond, was signed without actual or apparent authority on their part, and did not become a binding obligation of the surety company so as to effect a stay of execution, and that, therefore, the repudiation of liability thereon by the surety company was in no sense a legal wrong rendering it liable in damages to Mills.

It is thus rendered necessary to review additional facts touching the question of the authority of Fuller and Halsey to execute such a bond, which facts may be summarized as follows: We have already seen that the trial court directed verdict to be rendered in favor of the surety company at the close of the evidence introduced in behalf of Mills, the plaintiff. We note in this connection that all of the evidence introduced upon the trial was in behalf of Mills, other than two or three papers erroneously admitted in connection with the cross-examination of Mills' witnesses, as claimed by counsel for Mills. These for present purposes we ignore. Fuller, the surety company's local agent at Clarkston, testified, relative to Mills' applying for the bond and its execution on May 24, 1911, in part, as follows:

"Mr. Mills came into the office and wanted to know if I was handling surety bonds. I told him I was. He told me the kind of bond that he wanted. I told Mr.

Mills that I didn't have the authority to write that class of a bond but that I would have to take an application and it would have to go to Seattle to be approved. He then stated, he said, 'Well, I have got to have this within a day or two.' I don't exactly remember the exact time he had to have it in, but it would not give time for it to go to Seattle and back and wanted me to look up my instructions and see if I couldn't write it. So then afterwards why then I finally made up my mind that I would try to furnish him the bond, and then Mr. Mills went back over to Lewiston, I presume to your office, and got a bond and it was drawn up. I didn't draw up the bond. . . . Mr. Mills brought it over with the copy. . . . And then I took it up with Mr. Halsey and asked Mr. Halsey to sign it as attorney in fact and we signed the instrument, and then I went back to the office and gave Mr. Mills the original and forwarded the copy to the office in Seattle. At Mr. Mills' request I sent a letter along at the time, at Mr. Mills' request, asking that I request the company to telegraph back to me immediately if the bond was accepted."

Mills testified as follows:

"Q. You may go ahead and state, Mr. Mills, what was said by you and Mr. Fuller at the time you made application for this bond and what you did in order to secure the bond. A. We had partly two understandings. When I first went over there as to the bond he didn't seem to think he could get it under a few days— . . . You want to know how I finally got the bond? Q. Yes. A. I don't remember saying anything at all about writing to the company. . . . I asked Mr. Fuller for a bond and asked him if he could give a bond. Well, he could, he could give a bond in a few days. I said 'In a few days won't do. I want it to go into effect right now, because my land is up to be sold.' Well, he didn't know, he said he would look and see, and got down some books and looked through them, and he finally concluded if I could give him a surety bond — . . . He said if I could give him a good man on my bond he could do it. So I said I could give Mr.

Barclay, and I went back to Lewiston and in a short time I came back with Mr. Barclay and also with the bond, and he issued the bond. . . . He said the bond was good as long as he got it with Mr. Barclay's name to this other security. . . . I didn't ask him to write to Seattle whether they would accept it.''

This is the substance of the whole of Mills' testimony given upon his direct examination. His cross-examination does not show anything further as to the apparent authority of Fuller and Halsey to execute the bond. Mark A. Reese, the assistant resident managing agent of the surety company for this state at that time, testified that the Clarkston agency of the company was classed as a local agency, and Fuller and Halsey as local agents who were furnished supplies consisting of ''envelopes, stationery, application forms, and such bond forms as they were authorized to write,'' also a rate book and tin sign and a corporate seal; and that such agents had no power to execute a bond of this nature, though he admitted that they had power to execute judicial fidelity bonds to secure the faithful performance of the duties of receivers, trustees, administrators, guardians, etc. It is not claimed that Fuller and Halsey were furnished by the surety company with any forms of bond to secure stay of execution upon appeal, nor that there was any thought, either by Fuller, Halsey or Mills, of executing this bond upon any such form. It is conclusively shown that this bond was prepared wholly in typewriting in the office of Mr. Butler, attorney for Mills, neither Fuller nor Halsey having anything whatever to do with its preparation, and that it was then presented to them for execution. The sign furnished to Fuller and Halsey by the surety company and displayed in the window of Fuller's office had upon it in large letters these words and none other:

WE ISSUE SURETY BONDS

FIDELITY                              CONTRACT

JUDICIAL                              OFFICIAL

THE TITLE GUARANTY & SURETY
COMPANY,

HOME OFFICE, SCRANTON, PENNA.

CAPITAL AND SURPLUS, OVER $1,000,000.

Immediately upon being advised by Fuller that the bond had been executed and upon the receipt of a copy thereof, the resident state manager of the surety company at Seattle notified both the clerk of the court and Halsey by telegraph that the bond was executed without authority so to do on the part of Fuller and Halsey, and that the surety company denied all liability thereon. This occurred not later than May 26, the day before the execution sale took place. Soon thereafter, the clerk surrendered the bond to the surety company. This was done evidently upon the assumption that the bond was void by reason of having been executed without authority.

It is plain from the evidence that, whatever authority Fuller and Halsey possessed, apart from their alleged apparent authority, was evidenced by a written power of attorney. We ignore the supposed copy of such power of attorney introduced in evidence which counsel for Mills insist was erroneously admitted. However, since counsel for Mills are relying only upon the apparent authority rather than the express authority of Fuller and Halsey, we need not here concern ourselves with the question of their power as actually defined in their written power of attorney. Besides, if Mills were relying upon a power so evidenced, the burden would be upon him to show it, or at least to place the surety company in such position, by demand or otherwise, that it would be compelled to furnish him the information enabling him to show it. The rule of

law invoked by counsel for Mills is that stated in their quotation from the text of 2 C. J. 573, as follows:

"The true limit of the agent's authority to bind the principal as between the principal and third persons is the apparent authority with which the agent is invested, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation, in the absence of circumstances putting him on inquiry, to inquire into the agent's actual authority as the presumption is that one known to be an agent is acting within the scope of his authority. The fact that the agent's apparent authority is different from the actual authority conferred does not relieve the principal of responsibility."

We are quite unable to see that this rule can avail Mills, in the light of the facts above noticed appearing from evidence introduced in his behalf. The apparent authority of Fuller and Halsey, so far as our present inquiry is concerned, would seem as a matter of course to be only such as would be shown by facts which rendered their authority apparent to Mills, and not other facts which might render their authority apparent to some one else. But even taking all of the facts here shown touching their apparent authority, the contentions made in behalf of Mills would have but little if any support in addition to that which they would have by confining our attention only to facts known to him. The only facts which could possibly lead Mills to believe that Fuller and Halsey had authority to execute this bond, were: (1) Mills' knowledge, in a general way, evidently the result of hearsay only, that Fuller was the local agent of the surety company; he apparently had no knowledge, even as the result of hearsay, that Halsey had anything to do with the surety company. (2) Mills' being told by Fuller that he could furnish such a bond, but at first that it would take a

few days to procure it, manifestly conveying to the mind of Mills that it could not be executed there. (3) Mills' seeing Fuller look at "his books," which "books," however, Mills did not see so as to learn of their contents or nature, merely assuming that they were books containing instructions. (4) Mills' seeing the sign above quoted from, displayed in the office of Fuller, but which sign did not evidence any authority on the part of any particular person or persons to execute this or any other kind of a bond for the surety company. (5) The impression of a seal of the surety company upon the bond at the time of its signing by Fuller and Halsey.

The force of these facts as suggesting apparent authority on the part of Fuller and Halsey was bound to be viewed by Mills in the light of the following facts, of which he was manifestly bound to take notice: (1) The necessity of a written power of attorney possessed by Fuller and Halsey and evidencing their authority to execute such a bond; aside from what might be termed common knowledge that agents of insurance and surety companies are given their authority by written appointment, the very manner in which this bond was signed would bring home to Mills the fact that whatever power Fuller and Halsey possessed must have been granted them by a written power of attorney; (2) the fact that Mills made no inquiry as to the written evidence of authority of either Fuller or Halsey; (3) the fact that neither Fuller nor Halsey had any bond forms for the execution of bonds of this nature; and (4) the fact that the bond which was executed was prepared by Mills' own attorney wholly in typewriting and without either Fuller or Halsey having any part in its preparation.

We are of the opinion that the learned trial judge correctly decided, as a matter of law, that the bond

purporting to be executed by Fuller and Halsey for the surety company was executed without either actual or apparent authority on their part, and that, therefore, it did not become a binding obligation upon the surety company. This being our conclusion, it of course follows that the surety company could not be held liable in damages for its denial or repudiation of liability upon the bond. Some other contentions are made in behalf of both Mills and the surety company, but in view of our conclusion upon the question of the authority of Fuller and Halsey to execute the bond, we need not notice them.

The clerk of the superior court, and also the sheriff, were made defendants in the beginning of this action, but as to them a demurrer to the complaint was sustained and the action dismissed by the trial court. This is claimed to have been erroneous on the part of the trial court, but in view of our conclusion upon the question of the liability of the surety company, it is manifest that neither the clerk nor the sheriff could be held liable. It is, therefore, unnecessary to further notice this claim of error.

The judgment is affirmed.

FULLERTON and WEBSTER, JJ., concur.

MAIN, J. (dissenting)—It seems to me that, under the facts of this case, the question whether the representatives of the local agency had apparent authority to write the bond is one of fact and not of law, and that the trial court erred in treating the question as one of law.

For this reason I am constrained to dissent from the majority opinion.

ELLIS, C. J., concurs with MAIN, J.