LOUISIANA PUBLIC UTILITIES Co., INC., Respondent, *v.* ATLAS
ASSURANCE Co., LTD., and Others, Appellants.

First Department, June 2, 1933.

*Frederick T. Case* of counsel, for the appellants excepting Saint
Paul Fire and Marine Insurance Company.

*D. I. Rosenblum* of counsel [*S. J. Rosenblum*, attorney], for the
appellant Saint Paul Fire and Marine Insurance Company.

*Louis J. Wolff* of counsel [*Rumsey & Morgan*, attorneys], for the
respondent.

MARTIN, J.   On October 1, 1928, at about three P. M., the plain-
tiff's plant for generating electricity and manufacturing ice located
at Oakdale, La., was destroyed by fire.   The buildings and equip-
ment were valued at $90,381.19 with salvage of $26,298.07, and a
loss to the plaintiff of $64,083.12.   At the time of the fire the
plaintiff contends that it had insurance covering its plant to the
amount of $69,600 in the defendant companies and a like amount
in the Standard Insurance Company of New York, or a total of
$139,200.   The defendants contend that at the time of the loss,
and three hours before the fire occurred, their policies had been
canceled at the plaintiff's request and were not outstanding
so as to make them liable to contribute to the loss.   In either case,

the plaintiff had sufficient fire insurance to cover its loss and the sole question presented is whether the defendants' policies had been canceled or whether they were liable for contribution to the loss.

The Standard Insurance Company has paid to plaintiff one-half of its loss, or the sum of $32,041.56; the balance has not been paid. If the defendants' policies were in force at the time of the fire, they are liable for the other half as contributing insurance; if they had been effectively canceled, the remaining one-half of the loss is due from the Standard Insurance Company of New York and will be paid by it. There is no controversy as to the amount or the justness of the claim involving the loss, and it is conceded that if the defendants' policies were not canceled, they are liable in the proportions set forth in the complaint.

The issue, therefore, presented for our determination is between the claim of the Standard Insurance Company that it is liable for one-half of the plaintiff's loss and the claim of the defendants that they are not liable for any part of the loss.

Prior to October 1, 1928, the plaintiff had employed Wagner-Taylor Company of Philadelphia as its insurance broker. This broker procured the policies in suit for the plaintiff from the defendants' agent in New Orleans, La., the Hartwig-Moss Insurance Agency, Ltd. It is conceded that the law of that State provides that policies of fire insurance on property located therein must be written through a resident agent in the State.

In September, 1928, the plaintiff was advised by an insurance broker, the Brown-Crosby Company of Philadelphia, that it could obtain the plaintiff's insurance at a lower premium than it was paying. This insurance involved not only fire, but other kinds of insurance which the plaintiff and its parent corporation, the American Utilities Company, were carrying. The brokers of the plaintiff could not meet the competitive figures presented by the Brown-Crosby Company, and the plaintiff decided to cancel all insurance then in existence as of October 1, 1928, and to take out new insurance through Brown-Crosby Company.

In pursuance of this determination, the new broker, the Brown-Crosby Company, was authorized to cover the line of the American Utilities Company, and on September 26, 1928, this broker negotiated a binder with the Standard Insurance Company of New York, in an amount of $2,600,000 effective that day. Included in this amount was $69,600 applicable to the plaintiff's plant at Oakdale, La.

The plaintiff and its parent company proceeded to order the cancellation of the outstanding insurance placed by the Wagner-Taylor Company. On September 27, 1928, the day following the

issuance of the binder by the Standard Insurance Company, Joseph W. Henderson, the plaintiff's counsel, wrote to Mr. Taylor of the Wagner-Taylor Company, as follows:

" Dear Mr. TAYLOR:

" The American Utilities Company have decided to place their insurance in accordance with the parties with whom I have advised you. They are going to cancel the policies as of October 1st. Therefore we will not need the binder with the insurance company in Washington. Will you kindly be governed by the above advices with reference to the policies which are now in existence. You will receive instructions directly from Harrisburg with reference to the cancellations and not from me. I shall be glad to discuss this matter with you.

" Very truly yours,
" JOS. W. HENDERSON."

The formal order to cancel all policies was given to Wagner-Taylor Company in a letter from Gannett, Seelye & Fleming, Inc., which company operates the properties insured by the defendants, the said letter being dated September 28, 1928.

On October 1, 1928 (whether before or after the fire it does not appear), the Wagner-Taylor Company wrote to the Hartwig-Moss Insurance Agency, Ltd., in New Orleans, La., requesting the cancellation of the policies in suit. This letter was received by the Hartwig-Moss Insurance Agency in New Orleans on October 3, 1928, two days after the fire occurred, and was answered by telegram of that date to the Wagner-Taylor Company. In this telegram the defendants' agent claimed a cancellation of the policies in suit as of October first, thereby presenting the issue which we are called upon to settle on this appeal.

The fire which caused the loss involved in this litigation occurred on October 1, 1928, at about three-thirty P. M., at which time the defendant insurance companies became liable under the terms of the policy. The defendants contend that the insurance was taken away from them at noon on October 1, 1928, and was transferred to the Standard Insurance Company of New York. In other words, the defendants contend that the insurance had been transferred from them to the Standard Insurance Company a few hours before the fire, although they did not receive the request to cancel the policies until after the fire and at a time when the liability had accrued and when the rights of the parties were fixed and could not be changed.

The plaintiff claimed the full amount of the loss from the Standard Insurance Company and seems to have treated the defendants'

policies as canceled to the extent of collecting the unearned premium upon them as of October 1, 1928, at noon.

The standard form of fire insurance policy used in this State, as prescribed by section 121 of the Insurance Law, is also required to be used in the State of Louisiana. The policies in suit being in that form provide that " This policy shall be cancelled at any time at the request of the insured."

The court at Trial Term reviewed the law and the facts which are summarized, as follows: " I am unable to find that the insurance originally written by the defendants on the plaintiff's plant in Oakdale, Louisiana, had been cancelled or had become otherwise ineffective as of October 1, 1928, at 3 P. M., the day and time of the loss insured against. The letter of September 27, 1928, from the plaintiff's counsel to Wagner-Taylor Co., cannot be construed as a cancellation. Indeed, it specifically negates an intention presently to cancel by pointing out that ' you will receive instructions directly from Harrisburg [where the plaintiff's managing agents, Gannett, Seelye & Fleming, Inc. were located] with reference to the cancellations and not from me.' Furthermore, Wagner-Taylor Co. was not the agent of the defendants but solely the broker of the plaintiff. The effective cancellation was the letter of October 1, 1928, from Wagner-Taylor Company, the broker of the plaintiff, to Hartwig-Moss Insurance Agency, Lim., in Louisiana, the agent of the defendants, who had written the insurance in question. This letter was not received by the Hartwig-Moss Insurance Agency until October 3, 1928, two days after the fire. The law is quite clear that a cancellation of insurance is not effective, irrespective of the intention of the insured, until notice thereof is actually received either by the insurer or by his agent authorized to receive and accept such notice. This is the law in our State, the forum of this action. (*Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608; *Gately-Haire Co.* v. *Niagara Fire Ins. Co.*, 221 N. Y. 162.) It is the law of Louisiana, where the insurance was written (*McGraw Wooden Ware Co.* v. *German Fire Ins. Co.*, 126 La. 32). * * * The evidence does not sustain the contention of the defendants that Morgas was their agent authorized at the time to receive cancellations of policies, even assuming that the short telephone conversation relied on by the defendants could be construed as the expression of an intention between the parties thereby to cancel."

The insurance policies in question provide that they will not cover property insured more generally than by the policies themselves. It is also the contention of the defendants that these provisions were effective on September 26, 1928, because of the issuance

of a binder of other insurance on that day and that, therefore, from September 26, 1928, their policies were not in force.

The law seems to be well settled that a request for cancellation is not effective until delivery to the insurance company or its authorized agent is made, and that such delivery does not result from a mere deposit of the request to cancel in the mails.

In *Crown Point Iron Co.* v. *Ætna Ins. Co.* (127 N. Y. 608, at p. 619) the court said: " When did the notice reach the companies or their agent Mr. Little? If it reached him before the fire the policies were terminated *ipso facto* and were not in force when the loss occurred. If it reached him after the fire then the policies were in force when the loss occurred and the character of the contract was thereby changed from a contingent to a certain liability on the part of the insurer. A cause of action based on an absolute debt forthwith accrued to the plaintiff that was not extinguished by the subsequent receipt of the policies by Little. (*Stone* v. *Franklin Fire Ins. Co.*, 105 N. Y. 543, 550; *Van Valkenburgh* v. *Lenox Fire Ins. Co.*, 51 id. 465, 467.) "

There appears to be no doubt that the policies sued upon were in full force and effect at the time of the fire, and that the defendants' liability thereunder attached before any cancellation thereof.

The judgment should be affirmed, with costs.

MERRELL, McAVOY and SHERMAN, JJ., concur; FINCH, P. J., dissents and votes for reversal and dismissal of the complaint.

FINCH, P. J. (dissenting). Defendants appeal from a judgment in favor of plaintiff in an action based upon certain policies of fire insurance issued by defendants. The policies in question, however, were duly canceled prior to the occurrence of the fire. The complaint, therefore, should have been dismissed.

The facts are not in dispute, and, in so far as material, are as follows:

The Standard Insurance Company of New York offered to carry the insurance of the plaintiff on a somewhat different plan at a rate some forty per cent lower than that charged by the defendant companies in which plaintiff was then insured. Plaintiff accepted this offer, and on September 26, 1928, received a binder issued by the Standard Insurance Company covering various properties of the plaintiff, including a plant located in Oakdale, La. The latter was damaged by fire on October 1, 1928. Having obtained insurance in the Standard Insurance Company to take the place of that carried in the defendant companies, the plaintiff instructed the brokers through whom the latter policies had been obtained to cancel said policies as of October 1, 1928. Said policies were subsequently duly

canceled in accordance with said instructions and adjustment of return premium for the unexpired portion of the term made on that basis was paid to and accepted and retained by the plaintiff. The plaintiff claimed the full amount of the loss caused by the aforesaid fire of October 1, 1928, from the Standard Fire Insurance Company. The latter conceded its full liability to the plaintiff, but claimed that notwithstanding plaintiff had intended to cancel the policies in the defendant companies, notice to that effect had not been received by the defendants prior to the fire, and hence cancellation had not been effected. The Standard Insurance Company, therefore, claims there was double insurance upon the property in question and that the defendants are liable for one-half the loss. An arrangement was, therefore, made between Standard Insurance Company and the plaintiff to institute this action upon the agreement that Standard Insurance Company would pay the entire loss should the litigation prove unsuccessful.

The learned court at Trial Term sustained the contention of the Standard Insurance Company that the policies in the defendant companies had not been canceled prior to the fire, upon the ground that a letter of September 27, 1928, written by an officer and general counsel of the plaintiff to Wagner-Taylor Company, the broker through whom plaintiff had obtained the insurance, was ineffective as a cancellation, the court holding that said letter did not show an intention presently to cancel, and further that Wagner-Taylor Company were not the agents of the defendants, but the broker of the plaintiff. The form of this letter need not be considered, since the fact is that Wagner-Taylor Company accepted it as an instruction to cancel as of October first and acted accordingly by calling on the telephone on September 28, 1928, Mr. Harry Moragas, the New York representative of the defendants' agency, and instructed him to cancel the policies as of October first. Thus also was removed the objection that notice of cancellation had not been given to the agent of the defendants. In this latter connection I disagree with the conclusion of the learned court at Trial Term that the evidence does not sustain the contention of the defendants that Moragas was their agent authorized at the time to receive cancellations of policies. Moragas was the New York representative of the New Orleans agency of the defendants which issued and countersigned the policies in question. These agents have never questioned the authority of Moragas to act for them, but on the contrary have recognized such authority and ratified and approved his acts. It does not lie with a stranger to question the authority of an agent held out by both principal and agent to exist in fact and in fact recognized by the principal.

That the notice thus given to the representative of the defendants' agents in New Orleans was notice to the latter and to the defendants, is not open to question. As was said by Chief Judge POUND in *Barone* v. *Ætna Life Insurance Company* (260 N. Y. 410): "It is held to be a matter of common knowledge, of which the company is, of course, aware, that the insurance business is carried on by agents largely through subordinates; that it cannot properly be carried on in any other way, and that, therefore, the ordinary local but so-called general agent may, as a matter of implied consent, appoint sub-agents and subordinates whose statements, acts, knowledge or receipt of notice, within the ordinary course of business, will bind the company."

To recapitulate, on September twenty-eighth, or two days before the fire, the plaintiff's Philadelphia brokers, Wagner-Taylor Company, telephoned Harry Moragas, the New York representative of the agency of the defendants, and instructed him to cancel the policies in the defendant companies as of October first. This is the determinative piece of evidence in the case.

It follows that the judgment appealed from should be reversed and the complaint dismissed.

Judgment affirmed, with costs.