OPINION OF THE COURT
Cooke, J.
This is an action by a storekeeper to recover for a fire loss on an insurance policy issued by defendant. Plaintiff financed the premiums through a company called Insur Aid, which paid defendant and was in turn to receive from plaintiff monthly installments, including finance charges. Under the terms of their agreement, if plaintiff defaulted in any payment to Insur Aid, the latter was appointed his attorney in fact to cancel the policy.
*628 Plaintiff failed to pay a monthly installment due for November of 1974, and as a result on November 19, 1974 Insur Aid mailed him a notice stating that the effective date of cancellation of the policy would be December 3, 1974 at 12:01 a.m. Standard Time. Significantly, the statement also indicated that Insur Aid would notify the insurance company of the cancellation unless the past due installment was received by it not later than seven days before the effective date of cancellation.
Since plaintiff did not respond with payment, on December 2, 1974, Insur Aid mailed to defendant a copy of the above-described notice which indicated that the policy was to be canceled on December 3, 1974 at 12:01 a.m. That copy, however, was not received by defendant insurer until approximately 10:30 a.m. on December 4, 1974 in the course of regular mail. Ironically, a fire occurred at 8:30 p.m. that same day, December 4, at the premises of plaintiff, who now seeks to recover on the policy.
Special Term held for the plaintiff insured, and the Appellate Division agreed while also certifying a question to this court as to whether its decision was properly made. We answer in the affirmative.
This case involves an overlap of two principles recognized in the law of insurance. The first is that a request for cancellation of a policy is not effective, irrespective of the intention of the insured, until actual receipt by the insurance company or its agent (Russ Togs v Fidelity-Phenix Ins. Co., 36 AD2d 706, affd 32 NY2d 628; Louisiana Public Utilities Co. v Atlas Assur. Co., 238 App Div 474, 477, affd 263 NY 595). And, the second is that, in the absence of an express agreement to do so, the law does not recognize fractions of a day (Matter of Garelick v Rosen, 274 NY 64, 66, 68). Under the circumstances of this case, the blend of these two rules mandates recovery under the policy by plaintiff.
At the outset, it is necessary to consider defendant’s argument that these rules have been changed by statute. Defendant contends that since the cancellation notice was sent to it on December 2, 1974, which was prior to the December 3 effective date of said notice, the policy was canceled on the latter date — the day before the fire. In support of this position, defendant makes the broad assertion that common-law rules requiring actual receipt of a notice by an insurer or its agent in order to effect a cancellation of the *629 policy have been superseded by section 576 of the Banking Law, relating to cancellation of insurance contracts upon default pursuant to premium finance agreements. This argument is without merit.
Defendant focuses on a subdivision stating in part: "A copy of such cancellation notice shall be sent to the insurer or insurers prior to the effective date of cancellation * * * whereupon the insurance contract shall be cancelled” (Banking Law, § 576, subd 1, par [d]). Hence, defendant asserts that the mere sending of the notice to the insurer canceled the coverage. What defendant overlooks is that the statute also requires that: "Not less than ten days unconditional written notice be served upon the insured or insureds * * * that his or their insurance contract or contracts shall be cancelled” (par [a]; emphasis added). In this instance, the notice was not unconditional or absolute, but, as mentioned, advised that Insur Aid would notify the insurer unless payment were received seven days before the effective date. Perforce, even if we were to agree that the statute alters general principles of law, at least on the facts of this case, the provision was not complied with and would not operate to overcome the requirement of receipt of the cancellation notice by the insurer. This is all the more so in view of the holdings that strict compliance is essential to effectuate cancellation under the statute (see Matter of Ottey [MVAIC], 71 Misc 2d 164, 167, affd 39 AD2d 874; Matter of Nassau Ins. Co. [Newsome], 86 Misc 2d 942, 944).
Defendant’s principal argument is that since the cancellation notice was received at approximately 10:30 a.m. on December 4, 1974 and the fire occurred at about 8:30 p.m. that same day, the policy should be considered canceled prior to the fire, since notice was received earlier in the day. In this respect, this court has held it to be "a matter of common knowledge as well as a principle of law that a contract which, by its terms, expires on a certain day, remains in force for the whole of that day unless by express wording it is limited to a certain time of the day upon which it expires” (Matter of Garelick v Rosen, 274 NY 64, 68, supra). However, defendant seeks to distinguish Garelick, which involved the day upon which a one-month extension of a policy was to expire, from the situation presented here, which involves a cancellation, as contrasted with a termination, of a policy. In other words, it is urged that, when a policy terminates under the terms of the *630 agreement, the coverage should continue throughout the day unless otherwise provided, but that a cancellation notice should be effective at the moment of receipt. While we recognize that the contractual duration of the risk is not the same for all purposes as a cancellation (see 17 Couch, Insurance 2d, § 67:28, p 408), the applicable principles are not materially different in the context of this case.
We hold that on these facts midnight of the day of receipt should be the fixed point in time for cancellation to be effective. "In the absence of an express limitation, the law does not take notice of a fraction of a day” (Matter of Garelick v Rosen, 274 NY 64, 68, supra; see, generally, 43 Am Jur 2d, Insurance, § 336). The worth of this rule lies in its simplicity. The determination of the precise time of day a notice is received in this type of case would present serious evidentiary problems resulting from honest differences and might even become an invitation for perjury. A value of the "midnight rule”, often overlooked, is the reduced probability of events transpiring at or near that juncture with the beneficial consequence that crucial facts are less likely to be lost in the crush of daytime events.
Of course, it is recognized that the parties may particularize as to the time of day when a cancellation is to be effective (see Insurance-Duration-Fraction of Day, Ann., 38 ALR2d 768; see, also, 43 Am Jur 2d, Insurance, § 336, involving termination under the terms of the agreement, as distinguished from cancellation). Since the notice in Crown Point Iron Co. v Aetna Ins. Co. (127 NY 608, 617) called for cancellation "at once”, that case may be distinguished on the basis of the specificity or urgency of the request, although there is also no indication that the issue presented here was raised there. The point is that the setting of a particular time, such as midnight, noon, or any hour, avoids possibly irresolvable factual confrontations. This factual conglomerate illustrates the problems inherent in any other method of determining when the coverage ends. Accordingly, the order of the Appellate Division should be affirmed, with costs, and the question certified answered in the affirmative.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed, etc.